UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| RICARDO J. JOSEPH | NO.: 16-00125-BAJ-RLB |

### RULING AND ORDER

Before the Court is the **Motion to Suppress Evidence (Doc. 27)** and the **Motion to Strike (Doc. 41)** filed by Ricardo J. Joseph ("Defendant"). In his suppression motion, Defendant seeks to exclude evidence and inculpatory statements made after an alleged unconstitutional detention. (Doc. 27). Defendant also challenges the sworn statements attached to the United States of America's ("the Government") post-trial submission, arguing that the Court's consideration of this evidence would violate his Sixth Amendment right and certain of the Federal Rules of Evidence. (Doc. 41 at p. 3). The Government filed memoranda in opposition to Defendant's motions. (Docs. 29, 42). An evidentiary hearing on the motion to suppress was held on May 24, 2017. At the hearing, the Court heard testimony from Defendant and Corporal Nicholas Collins ("Cpl. Collins") of the Baton Rouge Police Department. Pursuant the Court's order, the parties submitted post-trial briefs on July 7, 2017. For the reasons that follow, Defendant's motions are **DENIED**.

I. **BACKGROUND**

On September 13, 2016, at approximately 6:00 p.m., Defendant was travelling eastbound on Washington Avenue in Baton Rouge, Louisiana, in a grey 2017 Jeep

1

Compass when Cpl. Collins observed Defendant not wearing a seatbelt.[1] Before initiating the stop, Cpl. Collins entered the license plate number of Defendant's car into the computer database, but he did not wait for the results. Cpl. Collins then initiated a traffic stop. When Cpl. Collins exited the vehicle and approached Defendant, he smelled a strong odor of marijuana. After introducing himself to Defendant, Defendant advised Cpl. Collins that he had a gun under the passenger seat inside the car.

Cpl. Collins then removed Defendant from the vehicle and performed a pat-down search for weapons. Defendant was placed in handcuffs and secured in the backseat of the police unit. Cpl. Collins then returned to the vehicle and recovered a Ruger 9mm pistol from underneath the passenger seat, eight grams of "high grade" marijuana found in a prescription bottle in the center console cup holder of the car, and three separate baggies of cocaine from the rear-left passenger door. Cpl. Collins advised Defendant of his *Miranda* rights and retrieved the results of the license plate search on the vehicle Defendant was driving, which Cpl. Collins then learned was reported stolen a few days prior. Defendant stated that he borrowed the vehicle from a friend, but failed to identify his friend when questioned by police officers.

On November 12, 2016, a federal grand jury returned an Indictment charging Defendant with one count of being a felon in possession of a firearm in violation of 18

---

[1] At the evidentiary hearing, Cpl. Collins was questioned extensively about his ability to identify Defendant's seatbelt violation. Specifically, Cpl. Collins testified that he had developed substantial experience in stopping people for seatbelt violations, having worked on detail for a federal seatbelt program called Occupant Protection, where he would write between 20 and 30 tickets per week. Cpl. Collins also testified that although he observed Defendant travelling at around 6:00 p.m. in September, there was sufficient daylight outside for him to observe the traffic violation. (Doc. 38 at 12:14-17).

U.S.C. § 922(g)(1), and one count of possession of controlled substances in violation of 21 U.S.C. § 844(a). (*See* Doc. 1).

## II. DISCUSSION

### A. MOTION TO STRIKE

After the evidentiary hearing on Defendant's motion to suppress, the Court instructed the parties to submit post-trial briefs, and to specifically address two discrete issues. The first issue was whether there were any radio transmissions or other location data that might clarify the number of police officers who were at the scene when Defendant was initially stopped.[2] (Doc. 38 at pp. 74-75). The second issue concerned whether the grade of marijuana with which Defendant was charged could produce an odor that would emanate beyond a sealed prescription bottle.[3] (Doc. 38 at pp. 77-78). In support of its post-trial brief, the Government submitted affidavits completed by Baton Rouge Police Department Sergeant Jeffrey Pittman and ATF Special Agent Mark Lusco, both of whom verified Cpl. Collins' testimony that the grade of marijuana Defendant was transporting would produce a discernable odor from inside a sealed prescription bottle. (*See* Docs. 40-4, 40-5).

---

[2] The Court requested this information to clarify a factual dispute regarding the legality of the initial stop. Specifically, Defendant testified at the evidentiary hearing that several officers from the BRAVE Team approached his vehicle with their guns drawn. Cpl. Collins testified that he was the only police officer to initiate the traffic stop and was joined by other officers after Defendant had already been detained in the back of Cpl. Collins' police unit. Accordingly, the Court asked that the Government procure any additional evidence that might clarify whether and how many additional officers initially approached Defendant's vehicle.

[3] The purpose of this information was to clarify Cpl. Collins' testimony regarding his initial encounter with Defendant. Cpl. Collins testified that upon approaching Defendant in his vehicle, he immediately smelled marijuana. However, during his subsequent search of the vehicle, Cpl. Collins did not find burnt marijuana. Instead, Cpl. Collins found 8 grams of what the Government has characterized as "high grade" marijuana in a sealed prescription bottle. In light of this information, the Court instructed the parties to address whether human detection of the high-grade marijuana was possible.

3

In his motion to strike, Defendant challenges the admissibility of the affidavits submitted by Sgt. Pittman and S.A. Lusco. (Doc. 41 at p. 1). Defendant argues the Federal Rules of Evidence, and specifically Rule 702, require that their affidavits be excluded from consideration by the Court (1) because neither of the law enforcement officers were present at the traffic stop, and (2) because neither was called on to testify at the evidentiary hearing or was otherwise available to be subjected to a *Daubert* examination before delivering their opinions on Cpl. Collins' ability to smell marijuana in Defendant's car,. (Doc. 41 at p. 2). Defendant further urges that because the officers were not previously subject to cross-examination by Defendant, the Confrontation Clause of the Sixth Amendment prohibits the Court from considering their affidavits in ruling on Defendant's motion to suppress. (Doc. 41 at pp. 2-3).

The Government counters that Defendant's arguments are without merit because (1) the United States Supreme Court's ruling in *Crawford v. Washington*, 541 U.S. 36 (2004), and the Confrontation Clause create a *trial* right that has not been found applicable to pretrial proceedings, and (2) the Court is not bound by the Federal Rules of Evidence when deciding preliminary questions about whether evidence is admissible. (Doc. 42 at pp. 1-2).

After reviewing the law and the arguments presented by both parties, the Court finds Defendant's arguments unavailing. First, as the Government correctly notes, Federal Rule of Evidence ("Rule") 104 makes clear that "the [C]ourt is not bound by evidence rules, except those on privilege" when deciding a preliminary question about whether evidence is admissible. F.R.E. 104(a); *see also United States*

*v. Posado*, 57 F.3d 428, 435 (5th Cir. 1995) ("We have consistently held that the rules of evidence are related in pretrial suppression hearings."). Defendant's objections to the affidavits do not concern privilege, but rather the reliability of the affiants' opinions. As such, the Court is free to consider the opinions offered in the attached affidavits in determining how to rule on Defendant's motion to suppress. Accordingly, Defendant's arguments under Federal Rule of Evidence ("Rule") 702 and *Daubert* are without merit. Defendant's *Crawford* argument must fail for a similar reason. Although the Supreme Court held in *Crawford* that the Confrontation Clause bars the admission of "testimonial statements" made by a non-testifying witness—unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him, *Crawford*, 541 U.S. at 59—neither the Supreme Court nor the United States Court of Appeals for the Fifth Circuit has ever held that the right to confrontation applies to *pretrial* proceedings. *See United States v. Morgan*, 505 F.3d 332, 338 (5th Cir. 2007) (noting that "the Fifth Circuit has not decided whether Crawford applies to pretrial proceedings and determinations"); *see also United States v. Bedoy*, 827 F.3d 495, 512 (5th Cir. 2016) (noting that *Crawford*'s strictures do not govern the preliminary determination of the admissibility of evidence in preliminary matters). Absent controlling authority that *Crawford* applies to a suppression hearing—in which the overall question is whether challenged evidence is admissible at trial—the Court holds that it does not apply.

Notwithstanding, the Court finds that the opinions presented in the disputed affidavits do not bear directly on any issue that might inform the Court's ruling on

Defendant's motion to suppress. The Court has reviewed all of the pleadings presented, as well as the arguments contained therein and the evidence submitted in support of those pleadings. The undersigned is satisfied that Cpl. Collins, as a detective in the Narcotics Division of the Baton Rouge Police Department and a former canine handler for the Street Crimes Unit, testified credibly about his ability to detect the raw marijuana Defendant was charged with possessing. Accordingly, the Court will not consider the affidavits when ruling on Defendant's suppression motion. Therefore, Defendant's motion to strike is **GRANTED**.

### B. MOTION TO SUPPRESS

In his motion to suppress, Defendant seeks to exclude (1) inculpatory statements made to Cpl. Collins when he was initially detained, and (2) all items seized as the result of the allegedly unconstitutional search. As a preliminary matter, the Court notes that many of the disputed issues forming the basis of Defendant's motion require that the undersigned make credibility determinations based on the conflicting testimony of Cpl. Collins and Defendant. Ultimately, and after considering all of the evidence available in the record, the Court finds that Cpl. Collins was a credible witness who testified truthfully about the circumstances surrounding the entirety of Defendant's traffic stop.

    1. Whether Cpl. Collins Had Reasonable Suspicion to Stop Defendant

Defendant first argues that Cpl. Collins did not have reasonable suspicion to stop the vehicle, and therefore Defendant's statements that he had a gun underneath the passenger seat of the vehicle should be suppressed. The basis of this argument is

Defendant's assertion that he was, in fact, wearing a seatbelt when Cpl. Collins stopped him, and that he did not take the seatbelt off until he was ordered to get out of the car. (Doc. 27-1 at p. 5; Doc. 38 at pp. 61:23-62:2). The Government counters that because Cpl. Collins witnessed Defendant committing a traffic offense, Cpl. Collins had reasonable suspicion to stop Defendant, and therefore the initial stop was valid. (Doc. 29 at p. 4).

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. This protection extends to traffic stops of vehicles, which are considered seizures for purposes of the Fourth Amendment. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005); *United States v. Shabazz*, 993 F.2d 431, 434 (5th Cir. 1993) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). The legality of a traffic stop is analyzed under the two-part test in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013); *Lopez-Moreno*, 420 F.3d at 430. In analyzing the propriety of a traffic stop under *Terry*, the Court first asks whether the officer's action in stopping the vehicle was initially justified at its inception by reasonable suspicion. *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013). "For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *Andres*, 703 F.3d at 832. The Court then determines "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place." *Andres*, 703 F.3d at 832 (internal quotation marks

7

omitted); *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc).

Defendant does not dispute that under Louisiana law, his failure to wear a seatbelt would constitute a traffic violation, validating Cpl. Collins' decision to initiate a traffic stop. Defendant disputes, however, Cpl. Collins' testimony that Defendant was not wearing a seatbelt to begin with. Specifically, Defendant testified at the evidentiary hearing that he was wearing his seatbelt at all times prior to being ordered out of the car by Cpl. Collins. (Doc. 38 at pp. 61:23-62:2).

Considering the totality of the circumstance, the Court finds that the Government proved that Cpl. Collins had reasonable suspicion to stop Defendant. Through the testimony provided by Cpl. Collins combined with his initial incident report, the Government adequately established that Defendant was not wearing a seatbelt at the time Cpl. Collins initiated the traffic stop giving rise to Defendant's motion. Thus Defendant's Fourth Amendment rights were not violated when Cpl. Collins initiated the traffic stop. *See United States v. Kelley*, 981 F.2d 1464 (5th Cir. 1993) (holding that police may stop persons and detain them to investigate a reasonable suspicion that a person is involved in criminal activity, including minor traffic violations such as seatbelt violations). Defendant's subsequent statements to Cpl. Collins regarding the gun placed under the passenger's seat of the vehicle was not the fruit of an unlawful seizure and should not be suppressed. Accordingly, Defendant's Motion to Suppress is **DENIED** as it pertains to the statements.

## 2. Whether Defendant Has Standing to Challenge the Search of the Vehicle

Defendant argues that because he was the driver of the Jeep when it was stopped by police officers, he has standing to challenge the alleged unconstitutional seizure of his person. Defendant maintains that "[t]he fact that the car was stolen has no bearing on his standing to challenge the seizure of his person and evidence derived therefrom." (Doc. 27-1 at p. 3). The Government disagrees, arguing that because Defendant did not own the vehicle, and because the vehicle was, in fact, stolen, Defendant had no reasonable expectation of privacy in the vehicle and therefore lacks standing to challenge the constitutionality of the stop. (Doc. 29 at pp. 5-6).

The Fifth Circuit utilizes a two-pronged inquiry to determine whether a defendant has the requisite reasonable expectation of privacy to contest the validity of a search under the Fourth Amendment. *U.S. v. Cardoza–Hinojosa*, 140 F.3d 610, 613 (5th Cir. 1998). This determination depends on: "(1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized, and (2) whether that expectation of privacy is one which society recognizes as reasonable," *Id.*, at 614; *citing United States v. Kye Soo Lee*, 898 F.2d 1034, 1037–38 (5th Cir. 1990). Further, the Fifth Circuit has directly held that a driver lacks a legitimate expectation of privacy in a *stolen* car and, therefore, lacks standing to challenge the search of the car. *See U.S. v. Lanford*, 838 F.2d 1351 (5th Cir. 1988).[4]

---

[4] Defendant refers the Court to the Supreme Court's opinion in *Brendlin v. California*, 551 U.S. 249 (2007) to argue that a person with no ownership interest in a vehicle has standing to challenge evidence discovered as a result of an allegedly illegal traffic stop. (Doc. 27-1 at p. 3). However, *Brendlin*

9

The uncontroverted evidence shows that the vehicle Defendant was driving at the time he was detained was reported stolen a few days prior.[5] Accordingly, Defendant lacks standing to contest the warrantless search of the vehicle that produced the evidence Defendant wishes to suppress. Therefore, Defendant's motion to suppress is **DENIED** as it pertains to all evidence—including the firearm and drugs—seized during the search of the vehicle.

## III. CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that the **Motion to Suppress (Doc. 27)** filed by Ricardo Joseph is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion to Strike (Doc. 41)** filed by Ricardo Joseph is **GRANTED**.

**IT IS FURTHER ORDERED** that a final pretrial conference is **SET** for <u>**Wednesday, August 16, 2017 at 2:00 p.m.**</u>

**IT IS FURTHER ORDERED** that the jury trial in this matter is **SET** for <u>**Tuesday, August 22-23, 2017 at 8:30 a.m. in Courtroom 2**</u>.

Baton Rouge, Louisiana, this 7th day of August, 2017.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

did not concern a defendant's standing to challenge the search of a stolen car. Rather, the defendant's ability to challenge the validity of a traffic stop was questioned because of his status as the passenger of the vehicle that was ultimately searched.

[5] At the evidentiary hearing, the parties stipulated that the car was reported stolen at the time of Defendant's encounter with Cpl. Collins. (Doc. 38 at 54:15-55:12).